Bartolomé y Antonio Pastor y Gomila, demandantes y apelados, *v.* José Miró y Pastor, demandado y apelante.

No. 3113.—*Visto:* Febrero 26, 1924. *Resuelto:* Marzo 30, 1925.

1. Domicilio — Evidencia — Apreciación y Suficiencia. — A. P., natural de España, residió 25 años en Puerto Rico donde acumuló una considerable

fortuna; en agosto, 1917, embarcó para su pueblo natal con la intención de regresar a fin de arreglar sus asuntos aquí y marcharse después definitivamente; al embarcar dejó aquí todos sus bienes entre ellos una respetable cantidad de dinero en los bancos; A. P. falleció en su pueblo natal tres meses después de su llegada. *Se resolvió:* que en vista de las circunstancias anteriores, el difunto no había perdido su domicilio en Puerto Rico para adquirirlo en España, aun cuando decía en una carta de mayo, 1917, "quiero llevar lo poco que tengo para poder disfrutar los pocos años que me quedan de vivir con usted". (*Railway Co.* v. *Cognet,* 3 Fed. (2) 21, discutido.)

2. TESTAMENTOS—"PROBATE", ACCIÓN PARA ESTABLECERLOS Y ANULACIÓN.—El auto de un tribunal Español declarando testamento ológrafo ciertas cartas de una persona allí fallecida no puede producir efecto alguno en Puerto Rico en cuanto a bienes inmuebles aquí radicados.

3. TESTAMENTOS—REQUISITOS Y VALIDEZ—TESTAMENTO OLÓGRAFO.—Palabras perdidas en una extensa carta de negocios y familiar, que no demuestran la intención deliberada del autor de la misma de disponer de sus bienes para después de su muerte, no revisten el carácter de testamento ológrafo.

SENTENCIA de *R. Díaz Cintrón*, J. (Ponce), en una acción de acuerdo con el artículo 702 del Código Civil, declarando sin lugar la contrademanda con costas. *Confirmada.*

*López de Tord & Zayas Pizarro,* abogados de los apelados; *Yordán & Yordán,* abogados del apelante.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal.

Don Amador Pastor y Pastor, natural de Sóller, Islas Baleares, España, fué un súbdito español que vivió muchos años en el barrio de Tanamá del municipio de Adjuntas de esta Isla y en 23 de marzo de 1909 otorgó testamento abierto ante el notario de Ponce, Don Francisco Descartes en el que manifestó ser vecino de Adjuntas, soltero, sin descendientes ni ascendientes e instituyó y nombró como único heredero suyo a su primo hermano y ahijado don Bartolomé Pastor y Gomila.

En el mes de agosto del año 1917 don Amador Pastor y Pastor fué de Puerto Rico a España, muriendo tres meses después en la ciudad de Palma de Mallorca, Islas Baleares, España, y en junio del año siguiente el heredero instituído en el expresado testamento abierto aceptó la herencia y tomó posesión de los bienes dejados por su causante, consistentes en un gran número de fincas radicadas en esta Isla, casi todas en Adjuntas, y en algún metálico en los bancos.

En enero del año 1919 don José Miró y Pastor acudió ante un tribunal de España y alegando la muerte allí de don Amador Pastor y Pastor, natural de Sóller, que siempre fué súbdito español, que regresó definitivamente a su patria estableciéndose en su pueblo natal y que su última voluntad está contenida en una carta suya del 17 de julio de 1909 dirigida a don José Miró Arbona, en la que nombró único heredero suyo al compareciente, ratificada en otras de 27 de mayo de 1910 y 14 de mayo de 1914, solicitó que tales cartas fueran declaradas su testamento. Así lo resolvió el juzgado de primera instancia del distrito de la Lonja de Palma, Islas Baleares, España, declarando dichas cartas como suficiente testamento a los efectos de su protocolización, sin perjuicio de tercero, y dichas diligencias fueron protocolizadas en una notaría de aquella ciudad.

Después de esos hechos don Bartolomé Pastor y Gomila, heredero según el testamento otorgado en marzo de 1909 ante el notario don Francisco Descartes, amparándose en el artículo 702 del Código Civil demandó a don José Miró y Pastor ante la Corte de Distrito de Ponce, a cuya jurisdicción corresponde el pueblo de Adjuntas, y solicitó que dictase sentencia declarando que las cartas suscritas por Amador Pastor y Pastor dirigidas a don José Miró Arbona, padre del demandado José Miró Pastor, no constituyen un testamento ológrafo de dicho señor y que su protocolización en una notaría en Palma, España, no puede producir efecto alguno en Puerto Rico ni puede perjudicar los derechos del demandante como único heredero instituído en testamento ante notario. Para esas peticiones alegó además de los hechos antes mencionados que Amador Pastor y Pastor se encontraba accidentalmente en España cuando murió; que jamás tuvo la intención de nombrar heredero a José Miró, ni otorgó testamento en ese sentido; que José Miró Pastor ha nombrado un apoderado en esta Isla por el que ha tratado de tomar posesión de los bienes de la herencia y trata de ejercer actos

de dominio como único heredero en virtud del pretendido
testamento ológrafo; y que a pesar de estar suscritas esas
cartas en un barrio de Adjuntas, de radicar los bienes en
dicho pueblo y de haber sido don Amador Pastor y Pastor
vecino de Adjuntas, el demandado no ha presentado dichas
cartas en la Corte de Distrito de Ponce, que es la única que
tiene jurisdicción para decretar su protocolización.

El demandado alegó en su contestación que don Amador
Pastor y Pastor se trasladó a España para residir permanente-
mente en su país natal, donde murió; que no falleció
con testamento abierto sino con cartas testamentarias; y que
el tribunal español donde fueron presentadas, único y com-
petente para conocer de ellas, estimó que eran la última vo-
luntad de don Amador Pastor y Pastor. Como defensa es-
pecial alegó que el testamento que don Amador Pastor y
Pastor otorgó en 23 de marzo de 1909 ante el notario Sr.
Descartes es nulo porque uno de los testigos que en él inter-
vinieron, don Antonio Catinchi y Consalví, tenía en esa fecha
una sociedad con dicho notario para asuntos judiciales y no-
tariales con interés en los honorarios que se devengaran en
el otorgamiento de ese testamento; y porque otro testigo,
don Eladio Ayala, en momentos dados servía de amanuense
a dicho notario y tenía en dicha fecha su agencia de nego-
cios en el mismo local que el notario autorizante del testa-
mento. Por contrademanda solicitó que la corte dispusiese
que don José Miró y Pastor sea puesto en posesión de todos
los bienes relictos por don Amador Pastor y Pastor; que el
contrademandado le pague $102,672.73 en concepto de frutos
de los bienes de la herencia y que declare que es nula, en
cuanto pueda perjudicar al demandante, la escritura de 11
de abril de 1919 en la que el contrademandado hipotecó a
favor de un hermano suyo cincuenta y ocho fincas de la he-
rencia para garantía de $35,000 que el contrademandádo dice
haber tomado a préstamo.

Los hermanos Bartolomé y Antonio Pastor Gomila se

opusieron a la contrademanda y celebrado el juicio correspondiente recayó sentencia declarando sin lugar en todas sus
partes la contrademanda; declarando que las cartas suscritas por don Amador Pastor y Pastor y dirigidas a don José
Miró Arbona no constituyen un testamento ológrafo, sin que
la protocolización que de las mismas se hizo en Palma, España, el 12 de marzo de 1919 ante el notario don José Socias
y Gradolí pueda producir efecto alguno legal en Puerto Rico
ni pueda perjudicar tal protocolización los derechos del demandante y contrademandado Bartolomé Pastor Gomila a
quien la corte declara único heredero de don Amador Pastor
y Pastor en virtud del testamento abierto que otorgó, cuyo
alcance y validez legal se declara y confirma. Las costas
fueron impuestas al demandado y contra-demandante.

Contra esa sentencia interpuso la parte demandada esta
apelación alegando ante nosotros los errores que a su juicio
cometió la corte inferior y pidiéndonos que revoquemos la
sentencia y dictemos otra declarando la demanda sin lugar
y procedente su contrademanda.

La carta que fué protocolizada en España como testamento ológrafo de don Amador Pastor y Pastor fué escrita
por él en Puerto Rico el 17 de julio de 1909, tres meses y
algunos días después de haber otorgado su testamento ante
notario, es una extensa carta sobre asuntos de negocios y
familiares y el párrafo de ella que se considera como testamento ológrafo, tal como aparece ante nosotros en la transcripción de los autos es el siguiente:

" . . . . . Yo tengo el testamento echo muriendo yo que vaya a
Pepito porque no quiero que todas estas ermanas mias agan con ustedes lo que icieron conmigo cuando murieron mis padres;".

Y las otras dos cartas también protocolizadas que se estiman ratificaciones de la anterior y que son de la misma
naturaleza que la primera dicen así, respectivamente:

" . . . . . cuando muera Jose tendra que venir atomar posesion

de todo esto tendra que valer nosotros ya noveremos pero Pepito lovera los terrenos llanos valen un capital. . . . ''

''. . . . . cuñado siempre te edicho que cuando tiara falta algo yo lo tengo puedes disponer de todo cuando tengo porque para quien trabaja cuando muera para ustedes nada me llevare asi que si tengo que vivir un pal de años mas los quiero vivir con ustedes que bastante etrabajado en este mundo. . . . ''

Nuestro Código Civil dedica la sección 4 del libro III, título III, capítulo 1, a los testamentos ológrafos y en el artículo 698 dispone que el testamento ológrafo deberá protocolizarse, presentándose con este objeto a la corte de distrito del último domicilio del testador, o a la del lugar en que éste hubiese fallecido, si el fallecimiento hubiere tenido lugar en Puerto Rico; el 700 determina lo que hará la corte de distrito presentado que sea el testamento ológrafo y acreditado el fallecimiento del testador; el 701 que para la práctica de esas diligencias serán citados el cónyuge sobreviviente si lo hubiere, los descendientes y ascendientes legítimos del testador, y en defecto de unos y de otros, los hermanos, quienes podrán presenciar la práctica de las diligencias y hacer de palabra las observaciones oportunas sobre la autenticidad del testamento; y dispone el 702 lo que hará la corte si estima justificada la identidad del testamento, declarando en su último párrafo que cualquiera que sea la resolución de la corte de distrito se llevará a efecto, no obstante oposición, quedando a salvo los derechos de los interesados para ejercitarlos en el juicio que corresponda.

La última disposición del artículo 702 es el fundamento del demandante para establecer el presente pleito.

[1] De acuerdo con el artículo 698 que hemos citado las cartas que se dice contienen el testamento ológrafo de don Amador Pastor y Pastor debieron ser protocolizadas en esta Isla presentándolas con ese objeto en la Corte de Distrito de Ponce a cuya jurisdicción corresponde el pueblo de Adjuntas, porque uno de sus barrios, Tanamá, fué el último do-

micilio del testador, pues aunque el apelante alega que el
último domicilio del testador fué en las Islas Baleares, Es-
paña, porque don Amador Pastor y Pastor se trasladó allá
con la intención de retirarse de Puerto Rico y permanecer
èn Sóller, su pueblo natal, por lo que en él adquirió su domi-
cilio, sin embargo, la prueba del apelado demuestra que hizo
su último viaje a España por motivos de enfermedad y con
la idea y propósito de regresar a esta Isla, sin que la prueba
presentada por el apelante sea suficiente para sostener lo
contrario, pues no son prueba suficiente de tal propósito de
trasladarse a España para residir permanentemente allí las
siguientes palabras contenidas en una carta suya de 17 de
mayo de 1917 escrita en esta Isla y dirigida a los padres
del apelante, a saber:

" . . . . . les abía ofrecido que el correo venidero me embarcaría
sino lo e echo es porque los giros están demasiado mal porque cuando
me embarque me quiero llevar lo poco que tengo para poder disfrutar
los pocos años que me quedan de vivir con ustedes tengo arreglado el
pasaporte para poderme embarcar mientras los giros no se pongan
a la par no salgo estoy bastante de malas. . . . . "

Y aunque es cierto que en agosto de ese año fué a España
donde murió a los pocos meses, los hechos no demuestran
que ese viaje lo hizo para establecer su residencia perma-
nentemente allá pues no se llevó "lo poco que aquí tenía"
como dice en su carta sino que dejó en esta Isla todos sus
bienes y hasta una respetable cantidad de dinero que tenía
en los bancos. Hemos visto la opinión de la Corte de Cir-
cuito de Apelaciones de los Estados Unidos para el Primer
Circuito, de diciembre 22, 1924, en el recurso establecido por
Porto Rico Railway, Light & Power Co. contra Eugenie
Cognet, 3 F. (2d) 21, sosteniendo la conclusión del jurado
de que los demandantes no adquirieron domicilio en esta
Isla, porque aunque existe mucha evidencia que parece in-
consistente con tal conclusión no podía decir la corte que no
hubiera evidencia que la sostenga. En el caso presente no

sólo la Corte inferior, en la que no hay jurado para los asuntos civiles, resolvió que cuando murió don Amador Pastor y Pastor tenía su domicilio en el pueblo de Adjuntas, sino que también la preponderancia de la evidencia sostiene esa conclusión, pues no sólo aparece así de su testamento notarial sino también especialmente de la única testigo presentada por el demandado la que declaró que cuando don Amador Pastor y Pastor embarcó para España en el año 1918 tenía la intención de regresar a esta Isla para arreglar sus asuntos y marcharse después definitivamente, por lo que cuando murió pocos meses después tenía su domicilio aquí, donde vivió 25 años, cualquiera que fuera su pensamiento para el futuro.

[2] Pero en el supuesto de que se trasladó a España para residir permanentemente allí el resto de su vida y que por ésto fué ese su último domicilio, aun así, la resolución del Juzgado de Primera Instancia de Palma declarando testamento ológrafo de don Amador Pastor y Pastor las expresadas cartas y su protocolización en una notaría de aquella ciudad no puede producir efecto alguno en esta Isla donde radican los bienes inmuebles, porque según dijimos en el caso de *Colón* v. *El Registrador,* 22 D. P. R. 370, la adopción y aplicación de la regla *lex rei sitae* en la forma en que lo han hecho las cortes americanas, incluyendo y regulando la capacidad de las partes, no quebranta ni la letra ni el espíritu de nuestro Código Civil, ni ninguno de sus principios fundamentales y establece, de una vez para siempre, una regla fija, simple y racional, conducente a evitar la inconsistencia y confusión de nuestras decisiones referentes a los estatutos real y personal y al efecto de leyes extranjeras; y haciendo aplicación de esa doctrina en ese caso declaramos que un tutor español de menores residentes en España autorizado por el Consejo de Familia, conforme lo exige el Código Civil Español, necesita autorización judicial de la corte de distrito donde radiquen los bienes para proceder a la cancela-

ción de una hipoteca sobre bienes inmuebles radicados en Puerto Rico.

[3] Por otra parte, las palabras contenidas en la carta que el apelante considera ser testamento ológrafo y las que estima ser su ratificación, no revisten tal carácter de testamento, pues perdidas en una extensa carta de negocios y familiar no demuestran la intención deliberada de disponer de sus bienes para después de su muerte, requisito que es esencial en los testamentos; distinguiéndose este caso del que fué resuelto por el Tribunal Supremo de España en 8 de junio, 1918, en que en dicho caso aparecía claramente la intención de testar al decir "Peñafiel, a 24 de octubre, 1915. Pasicos de mi vida: En esta primera carta de novios va mi testamento, todo para tí para que me quieras siempre y no dudes del cariño de tu Matilde. Rubricado," no solamente porque se usó la palabra testamento, aunque no era de absoluta necesidad, sino porque todas sus palabras demuestran la intención clara y manifiesta de disponer de sus bienes para después de su muerte, requisito que no podemos encontrar en la carta de 17 de julio, 1919. Como dice el apelado en su alegato "es realmente sorprendente que se intente sostener que el hombre que dice que ya tiene hecho su testamento, que todo lo tiene arreglado, con estas mismas frases ha querido decir que estaba en aquel mismo momento haciendo su testamento."

Habiendo llegado a las conclusiones antes expuestas, o sea que el último domicilio de don Amador Pastor y Pastor fué el barrio Tanamá de Adjuntas, P. R.: que por este motivo la carta que se dice contener su testamento debió presentarse para su protocolización en la Corte de Distrito de Ponce: que las diligencias de su protocolización en un tribunal de España no tiene validez en esta Isla en la que radican sus bienes inmuebles, y que de todos modos la expresada carta no contiene una disposición testamentaria, se hace innecesario resolver las otras cuestiones suscitadas por el

apelante en su contrademanda porque no siendo heredero de don Amador Pastor y Pastor no está facultado para atacar el testamento notarial que dicho señor otorgó, ni la hipoteca que el contrademandado constituyó sobre los bienes que heredó de Amador Pastor, hipoteca que ya está cancelada.

*La sentencia apelada debe ser confirmada.*